UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**BARBARA S. MABRA,**

    **Plaintiff,**

v.

    Civil Action 2:11-cv-00407
    Judge Edmund A. Sargus
    Magistrate Judge Elizabeth P. Deavers

**COMMISSIONER OF SOCIAL
SECURITY,**

    **Defendant.**

## OPINION AND ORDER

Plaintiff, Barbara S. Mabra, brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for social security disability insurance benefits. This matter is before the Court for consideration of the Commissioner's June 28, 2012 Objections (ECF No. 15) to the United States Magistrate Judge's June 19, 2012 Report and Recommendation (ECF No. 13), recommending that the Court remand this case to the Commissioner for further consideration. For the reasons stated below, the Court **OVERRULES** the Commissioner's Objections and **ADOPTS** the Magistrate Judge's Report and Recommendation. Accordingly, this case is **REMANDED** to the Commissioner for further consideration.

**I.**

Plaintiff maintains that she became disabled on September 29, 2004 because of back problems and other conditions. The medical record in this case includes MRI testing from 2002,

2004, and late 2006.[1] (R. at 88–90, 192.) Specifically, in July 2002 an MRI of Plaintiff's lumbar spine revealed "[m]ultilevel degenerative changes, a component of central canal and lateral recess stenosis most severe at L4-5 where there is also a central disc protrusion." (R. at 88.) Results from an April 2004 MRI included "central canal stenosis of a mild degree at the L3-4 and L4-5 levels" with "[d]isc bulging and facet changes contribut[ing] to the central canal stenosis and lateral recess stenosis." (R. at 90.) A December 20, 2006 MRI of Plaintiff's lumbar spine demonstrated "shallow posterior disc protrusion with annular rent and right eccentricity" at L4-5 and a "nominal posterior disc bulge" at L3-4. (R. at 192.) The record also contained a February 2006 lumbar spine x-ray that yielded normal findings. (R. at 116.) In addition to the objective testing, treatment records contain frequent findings of back tenderness, decreased range of motion, and positive straight leg raising upon examination.[2] (*See, e.g.*, R. at 162, 164, 172, 174, 186.) Moreover, the record reflects that Plaintiff also suffered from diabetes and hypertension. (*See, e.g.*, R. at 110.)

The record evidence includes various opinions from Thomas Brunsman, M.D., Plaintiff's treating physician. (R. at 141, 150–57.) Although Dr. Brunsman's various opinions were sometimes internally inconsistent, the opinions reflected more severe limitations than the Administrative Law Judge ("ALJ") ultimately assigned. The record also contains evidence from

---

[1] At this time, the Court will conduct only a brief review of the medical evidence. Within the Report and Recommendation, the Magistrate Judge performed a more detailed review of both the medical record and administrative hearing testimony. (Report & Recommendation 2–11, ECF No. 23.)

[2] The Court acknowledges that treatment records also included normal physical examination findings, as Commissioner stresses. The Commissioner's Objections, however, omit discussion of the various abnormal findings within the treating physician's treatment notes.

2

William D. Padmadan, M.D. Following a consultive examination in February 2006, Dr. Padmadan suggested that Plaintiff "may need restrictions for isometric exercises such as lifting, pushing, and pulling, because of her hypertension more than her back[,]" but did not offer specific levels of limitation. (R. at 110–11.) Following a second examination in September 2006, given the presence of Waddell's signs,[3] Dr. Padmadan was uncomfortable recommending specific restrictions. (R. at 120.)

On March 20, 2009, an ALJ issued a decision finding that Plaintiff was not disabled. The ALJ specifically concluded that Plaintiff retained the residual functional capacity ("RFC") to perform the full range of medium exertional work. (R. at 17.) Based on this conclusion, the ALJ found that Plaintiff was capable of performing her past relevant work. (R. at 21.) On June 19, 2012, the Magistrate Judge recommended that the Court remand this case to the Commissioner for further consideration. The Magistrate Judge specifically found that substantial evidence did not support the ALJ's decision because, in reaching her RFC assessment, the ALJ relied on her own lay opinion. On June 28, 2012, the Commissioner objected to the Report and Recommendation. The Commissioner maintains that under the circumstances of this case, the ALJ was justified in reaching a common sense interpretation of Plaintiff's RFC.

## II.

If a party objects within the allotted time to a report and recommendation, the Court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed.

---

[3] "Waddell's signs" refers to a system of identifying psychogenic or nonorganic manifestations of pain. Waddell *et al.*, *Nonorganic Physical Signs in Low-Back Pain*, Spine (Phila Pa 1976), 1980 Mar-Apr;5(2): 117-25; http://spinejournal.com.

3

R. Civ. P. 72(b). Upon review, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

Within the Social Security context, the Court's review "is limited to determining whether the Commissioner's decision 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also*, 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive"). Put another way, a decision supported by substantial evidence is not subject to reversal, even if the reviewing court might arrive at a different conclusion. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). "Substantial evidence exists when 'a reasonable mind could accept the evidence as adequate to support a conclusion [and] . . . presupposes that there is a zone of choice withing which the decision-makers can go either way, without interference by the courts.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (internal; citation omitted). Even if supported by substantial evidence, however, " 'a decision of the Commissioner will not be upheld where the [Commissioner] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.' " *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

### III.

The issue before the Court on the Commissioner's Objections is whether, under the circumstances of this case, the ALJ was justified in relying on her own interpretation of the medical evidence in rendering her RFC assessment. Upon review, the Court agrees with the

4

Magistrate Judge that substantial evidence does not support the ALJ's RFC assessment.

A claimant's RFC "is the most [the claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). As the Commissioner stresses, "the ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of [her] residual functional capacity." *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) (internal quotations omitted). In reaching an RFC determination an ALJ "is not required to recite the medical opinion of a physician verbatim" and may consider both medical and non-medical evidence. *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009).

At the same time, however, an RFC determination must account for all the relevant medical evidence, including medical opinion evidence. *See* 20 C.F.R. § 404.1545(a)(3). ("'An ALJ is not free to set his own expertise against that of a physician who presents competent evidence.'") (quoting *McCain v. Dir., Office of Workers Comp. Programs*, 58 F. App'x 184, 193 (6th Cir. 2003)). Because ALJs are not generally entitled to make their own medical findings or interpret raw medical data, this Court has emphasized the importance of medical opinions in determining a claimant's RFC. *Isaacs v. Astrue*, No. 1:08-CV-00828, 2009 WL 3672060, at *10 (S.D. Ohio Nov. 4, 2009); *but see Deskin v. Comm'r Soc. Sec.*, 605 F. Supp. 2d 908, 912 (N.D. Ohio 2008) (indicating that if the record contains minimal evidence, "an ALJ permissibly can render a commonsense judgment about functional capacity even without a physician's assessment") (internal quotations omitted).

In this case, it is clear from the record that the ALJ relied on her own interpretation of the medical record. As the Magistrate Judge provided:

5

> In this case, as detailed above, the ALJ found Plaintiff retained the RFC to perform a full range of medium work. The record in this case, however, does not contain a single opinion from any medical source that indicates Plaintiff is functionally capable of performing medium work. In reaching this finding, the ALJ specifically stated that "[t]he record does not contain evidence of abnormal clinical and laboratory findings sufficient to document any further degree of loss of function." (R. at 17.) She also acknowledged that MRIs demonstrated some degenerative changes, but she did not find these results "of such severity as would be expected to result in radiculopathy." (*Id.*) The ALJ further suggested that she was giving Plaintiff the benefit of the doubt in precluding heavy work given "the relatively minimal clinical and diagnostic findings." (R. at 17.) In reaching this determination, the ALJ did not accept, or give any great weight, to Dr. Brunsman's functional capacity opinions, which provided severer limitations. The ALJ found Dr. Brunsman's opinions to be inconsistent with the medical evidence, and noted that if Plaintiff's back condition was as severe as Dr. Brunman indicated, "he would have been expected to have referred her to a specialist for further evaluation or for more tests such as electromyography." (R. at 18.) The ALJ also did not give any great weight to Dr. Padamadan's inconclusive opinions, and found Plaintiff to be not entirely credible.

(Report & Recommendation 16–17, ECF No. 13 (footnote omitted).) Based on these circumstances, the Court can only conclude that the ALJ was relying on her own interpretation of the medical evidence in determining that Plaintiff could perform medium work.

Ultimately, the Court finds that the ALJ was not justified in relying on her own lay interpretation of the medical evidence in rendering Plaintiff's RFC. Contrary to the Commissioner's suggestions, the record in this case did not permit the ALJ to render her own commonsense judgment as to Plaintiff's functional limitations. Rather, considering the combination of the MRI results, abnormal physical examination findings, and Plaintiff's various conditions, the record was sufficiently complex to require medical interpretation. Additionally, the Court cannot ignore that the ALJ offered her own lay interpretation of the medical evidence in the face of more severe opinions from Plaintiff's treating physician. Once again, the Court finds the analysis of the Magistrate Judge persuasive:

6

> [S]ubstantial evidence does not support the ALJ's RFC determination. . . . The record in this case contains three different MRIs indicating that Plaintiff has at least some level of degenerative changes in her back. Specific findings of these MRIs included stenosis, disc protrusion, disc bulging, facet changes, and moderate to advanced arthropathy. (R. at 88–90, 192.) Additionally, Dr. Brunsman's treatment notes consistently included findings of tenderness as well as positive straight leg test results upon examination. (*See, e.g.*, R. at 131, 162, 174.)
>
> In reaching her RFC determination, the ALJ accounted for this medical evidence by relying on her own lay interpretation. Tellingly, the ALJ did not credit any medical opinion evidence in reaching her RFC assessment, as she gave no great weight to [] all of the medical source opinions within the record. Rather, the ALJ based her RFC assessment on her own medical conclusion that the MRI results and other evidence would only justify limiting Plaintiff to medium exertional work.
>
> Although Plaintiff's MRI results may appear minimal to the lay person, the ALJ was not qualified to translate this medical data into functional capacity determinations. *See Roso v. Comm'r of Soc. Sec.*, No. 5:09CV198, 2010 WL 1254831, at *8 (N.D. Ohio Mar. 11, 2010) ("[T]he ALJ is simply not qualified to interpret the raw medical data in these MRI reports and no medical opinion in the record supports the ALJ's determination.") (internal quotation and citation omitted); *cf. also Meadors v. Astrue*, 370 F. App'x 179, 183 (2nd Cir. 2010) (holding that, although MRI results showed only mild degenerative changes of a claimant's lumbar spine "the ALJ was not at liberty to substitute his own lay interpretation of that diagnostic test for the uncontradicted testimony of [the treating physician], who is more qualified and better suited to opine as to the test's medical significance.").

(Report & Recommendation 17–18, ECF No. 13 (footnote omitted).)

Finally, to the extent the Commissioner suggests that Dr. Padamadan's opinions provide substantial evidence in support of the ALJ's RFC assessment, the Court disagrees. Dr. Padamadan did not find that Plaintiff had no physical restrictions. Nor did Dr. Padamadan opine that Plaintiff was capable of medium work. Rather, a fair reading of Dr. Padamadan's records suggest that he was uncomfortable, based on his examinations of Plaintiff, setting specific levels of restriction. The ALJ did not rely on Dr. Padamadan's opinions, but instead gave them no great weight due to their inconclusive nature.

7

Based on the circumstances of this case, the ALJ improperly used her own medical judgment. Accordingly, at least based on the current record, substantial evidence does not support her RFC assessment and remand is appropriate.

## IV.

For the above reasons, as well as the reasoning outlined within the Report and Recommendation, the Court **OVERRULES** the Commissioner's Objections (ECF No. 15) and **ADOPTS** the Magistrate Judge's Report and Recommendation (ECF No. 13). This case is **REMANDED** to the Commissioner for further consideration.

**IT IS SO ORDERED.**

8-21-2012
**DATE**

**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**

8